Filed 5/9/22  P. v. Villa CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADAM VILLA,<br><br>Defendant and Appellant. | C089392<br><br>(Super. Ct. No. 15F01261)<br><br>OPINION ON TRANSFER |

Defendant Adam Villa and codefendants Joshua Parrish and Frank Camacho were convicted of attempted murder, attempted robbery, and related firearm crimes.  On appeal, defendant initially argued that his conviction for attempted murder must be reversed under Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).  Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, defendant also argued the trial court erred in imposing certain fines, fees, and assessments without holding a hearing to determine his ability to pay them.

In an unpublished opinion, we modified the judgment to effectuate Penal Code section 654[1] by imposing and staying a full term for the attempted robbery conviction

---

[1]      Undesignated statutory references are to the Penal Code.

1

and associated firearm enhancement, and affirmed the judgment as modified. (*People v. Villa* (July 14, 2020, C089392) [nonpub. opn.].)  The Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats 2021, ch. 551) (Senate Bill 775).

In supplemental briefing on transfer of this case, defendant argues his conviction for attempted murder must be reversed under Senate Bill 775.  The People declined to file a posttransfer brief.  We agree with defendant.  We will reverse defendant's conviction for attempted murder and the associated firearm enhancement, remand the matter to give the People the opportunity to retry defendant on the attempted murder charge and the associated firearm enhancement and, if the People decline to do so, instruct the trial court to conduct a full resentencing on the remaining conviction and enhancement.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

FACTUAL AND PROCEDURAL BACKGROUND

Given defendant's contentions on appeal, we provide only a brief recitation of the facts.[2]  In February 2015, defendant, Parrish, and Camacho arrived at the victim's home under the pretext of purchasing marijuana.  When the victim opened the door, defendant pointed a gun in his face.  The victim, who was unarmed, began fighting with defendant over the gun.  Meanwhile, the two other men, who also were armed, pushed their way inside.  During the melee, the three intruders each shot at the victim a total of five to 10 times.  The victim's friend, who was visiting the victim at the time of the incident, testified at trial that he heard defendant say, "[E]verybody just chill out.  We're here just

---

[2]     We previously granted defendant's request for judicial notice of our unpublished opinion in codefendant Parrish's appeal, *People v. Parrish* (Apr. 25, 2019, C087461).  To facilitate our review in the instant case, we will incorporate by reference the facts and procedural history from our unpublished opinion in that appeal.

2

to take [stuff]." Defendant, Parrish, and Camacho also beat up the friend. Eventually, the victim chased the three intruders outside and the men left in a waiting vehicle.

The victim suffered gunshot wounds to his legs, abdomen, and bladder. His bladder had to be sewn up, and he was forced to wear a colostomy bag for a year and a half. He also was shot in his buttocks, and other shots grazed his stomach and back. These injuries required the victim to undergo seven or eight separate surgeries.

At trial, the court instructed the jury, in relevant part, as follows:

"A person may be guilty of a crime in two ways.

"One, he or she may have directly committed the crime. I will call that person the perpetrator.

"Two, he or she may have aided and abetted a person who directly committed the crime.

"A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator

"Under some circumstances[,] if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." (CALCRIM No. 400, as given.)

The court next instructed the jury on direct aiding and abetting principles, as well as the elements of attempted murder and attempted robbery. The court then explained the natural and probable consequences doctrine:

"Under certain circumstances[,] a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.

"To prove that the defendant is guilty of attempted murder, the People must prove that one, the defendant is guilty of attempted robbery.

"Two, during the commission of attempted robbery[,] a co-participant in that attempted robbery committed the crime of attempted murder.

3

"And three, under all of the circumstances[,] a reasonable person in the defendant's position would have known that the commission of attempted murder was a natural and probable consequence of the commission of the attempted robbery. [¶] . . . [¶]

"A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing usual intervenes." (CALCRIM No. 402, as given.)

The prosecutor began his closing argument as follows: "Ladies and Gentlemen, we're at our noon hour I'm going to tell you why that during the course of this attempted robbery it's a natural and probable consequence that these individuals are gonna pull a gun on [the victim] and shoot him six times." The prosecutor then told the jury, "What's important . . . is there is no need, absolutely zero need to say who did the attempted murder. [¶] If some of the three did it and there is a natural and probable consequence of a robbery, they're guilty."

The prosecutor further argued as follows: "[CALCRIM No.] 400 is basically saying that you're a perpetrator. You did it.

"[CALCRIM No.] 401 says you aid and abet it. You aid and abet somebody in the attempted murder.

"Okay. When you're coming in and you're forcing your way in on them, . . . you're guilty of attempted murder. Of course, the shooter obviously is attempted murder.

"But [CALCRIM No.] 402 here is the natural and probable consequence. And this is—this is clearly the liability that lies on everybody in this case.

"Is that when you commit an attempted robbery in somebody's home with three or more individuals and guns, what do you [think is going to] happen?

"Precisely what did happen. Is [the victim] going to resist. He's going to try to save his life, and gun play is going to go—I mean, it—harken[s] back to the argument I made a couple minutes ago.

4

"Why do you bring a gun? You bring a gun to exact fear on somebody and defend against yourself if somebody resists you.

"It is a natural and probable consequence of a robbery—attempted robbery. Okay. It is what is likely to happen as evidence 'cuz it did happen here. Okay. [It is] precisely what happened. So this is that liability."

The jury subsequently found defendant guilty of attempted murder and attempted robbery while entering a structure and acting in concert. (§§ 664, 187, subd. (a), 211, 213, subd. (a)(1)(A).) As to both counts, the jury found defendant personally used a firearm and personally discharged a firearm. (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b)-(c).)

In April 2019, the trial court sentenced defendant to state prison for an aggregate term of 28 years, as follows: seven years for the attempted murder conviction, plus 20 years consecutive for the firearm enhancement, and one year consecutive for the attempted robbery conviction, plus six years eight months consecutive for the firearm enhancement, stayed under section 654. It also imposed a $5,000 restitution fine (§ 1202.4, subd. (b)), a corresponding $5,000 parole revocation fine (§ 1202.45), an $80 court operations assessment (§ 1465.8, subd. (a)(1)), and a $60 court facilities assessment (Gov. Code, § 70373).

## DISCUSSION

### *Senate Bill 775*

"Senate Bill 775 amended section 1170.95. As relevant, it now reads: 'A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018).' (§ 1170.95, subd. (g).) Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder. Accordingly, the

5

natural and probable consequences doctrine theory urged in the trial court is now invalid." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196, fn. omitted.)

We turn next to whether giving the instructions here that allowed the jury to convict defendant of attempted murder under the natural and probable consequences doctrine was harmless error. When, as here, a trial court "instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.] [A defendant's attempted] murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that [he] directly aided and abetted the [attempted] murder." (*People v. Chiu* (2014) 59 Cal.4th 155, 167, superseded on other issues by Senate Bill 1437, as stated in *People v. Lewis* (2021) 11 Cal.5th 952, 959.)

Once a defendant has "shown that the jury was instructed on correct and incorrect theories of liability, the presumption is that the error affected the judgment: ' "Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . ." ' " (*In re Martinez* (2017) 3 Cal.5th 1216, 1224.) Reversal is required unless we determine after examining the entire cause that the error is harmless beyond a reasonable doubt. (*People v. Aledamat* (2019) 8 Cal.5th 1, 13.)

Here, the trial court instructed the jury on direct aiding and abetting, as well as the natural and probable consequences doctrine, as alternate theories of liability for attempted murder. The prosecutor's closing argument focused the jury on the natural and probable consequences doctrine. The prosecutor told the jury that, through his argument, he would demonstrate the attempted murder committed by defendant and his codefendants was the natural and probable consequence of their attempted robbery. He argued that liability for attempted murder in this case lay not on the direct perpetrator, who the jury need not identify, but on all three defendants as the natural and probable consequence of their

6

attempted robbery. The jury then returned a general verdict finding defendant guilty of attempted murder and attempted robbery.

Our review of the record did not offer any insight into the jury's deliberations and the theory underlying the verdict." (*People v. Sanchez, supra*, 75 Cal.App.5th at p. 197.) Under the circumstances, the error in instructing the jury on the natural and probable consequences doctrine was not harmless beyond a reasonable doubt. We must reverse defendant's conviction for attempted murder and give the People the opportunity to retry defendant on the attempted murder charge within the time limit prescribed by law. Given our conclusion, we need not address defendant's argument that the trial court violated his constitutional rights by imposing fines, fees, and assessments without holding a hearing to determine his ability to pay them.

DISPOSITION

Defendant's attempted murder conviction is reversed and the findings as to the associated firearm enhancement are vacated. Defendant's attempted robbery conviction and the findings as to the associated firearm enhancement are affirmed. We remand the matter to the trial court with instructions that the People may, if they choose, retry defendant on the attempted murder charge and the associated firearm enhancement within the time limit prescribed by law. If the People choose not to retry, the trial court is directed to resentence defendant fully on his remaining conviction for attempted robbery and the associated firearm enhancement.

                                                             KRAUSE          , J.

We concur:

          BLEASE          , Acting P. J.



          DUARTE          , J.

7